UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JALAL MUFLIHI,

                    Plaintiff,

                                        Case No.: 2:22-cv-12609
v.                                      Hon. Gershwin A. Drain

U.S. STEEL CORP.,

                    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO STRIKE AFFIDAVITS [#45], DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#38],
CANCELLING HEARING AND SETTING DATES**

I.      **INTRODUCTION**

Plaintiff Jamal Muflihi brought the instant action against his former

employer, United States Steel Corporation ("USS"), alleging Defendant

discriminated against him based on his race, religion, and national origin in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., 42

U.S.C. § 1981, and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS

§ 37.2101 *et seq*. (ELCRA).  Plaintiff also alleges Defendant retaliated against him

for filing complaints and grievances against his supervisor and a Senior Labor

Relations Manager in violation of Title VII and the ELCRA.  Finally, Plaintiff alleges that he was subjected to a hostile work environment in violation of Title VII and the ELCRA.

Presently before the Court is the Defendant's Motion for Summary Judgment, filed on September 12, 2024.  Plaintiff filed his Response in opposition on October 2, 2024, and Defendant filed a Reply in support of its Motion for Summary Judgment on October 16, 2024.  Also, before the Court is the Defendant's Motion to Strike the Affidavits of Ahmad Rahal, Aaron Smith, and Lance Bledsoe.  This matter is also fully briefed.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of these matters.  Accordingly, the Court will determine Defendant's pending motions on the briefs and will cancel the hearing.  *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants in part and denies in part Defendant's Motion to Strike Affidavits and denies Defendant's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

Plaintiff is a Yemeni American Muslim who began his employment with Defendant at its Great Lakes Works ("GLW") facility in Michigan on March 4, 2013. Plaintiff was a member of the United Steelworkers Union ("USW") and worked as a utility technician in the Trucks and Cranes Department ("TCD").

Plaintiff was the only Yemeni American Muslim working in the TCD during his employment with USS.  In 2014, Plaintiff was promoted to Labor Grade 2 position.  His job duties included providing mobile equipment support throughout GLW.  Plaintiff was supervised by Neal Golba, who as manager, had the right under the USW contract to manage the business and direct the work force in the TCD.

Throughout his employment, Plaintiff claims he was subjected to verbal harassment, mistreatment, and loss of job opportunities, including overtime and training, because of his identity as an Arab Yemeni Muslim.  For instance, Plaintiff claims that Golba denied him training on equipment. Golba maintains that training at GLW is based on an individual's request to be trained.  Defendant further asserts that if multiple people requested training on equipment, the person with the most seniority is chosen to receive the training first.  If no employee volunteers for training, the person with the least seniority is forced to train.

Defendant further argues that contrary to Plaintiff's claims, Plaintiff received training and certification to operate several different types of equipment between 2014 and 2022. Specifically, Plaintiff received training on operating the Gradall (2014), the CAT-Hough (2014), Taylor Mag (2015), Flat Bed Seal Truck (2018), Track Mobile (2021), Ottawa Scrap (2021), Sennebogen (2021), Water Truck (2021), Scrap Truck (2021), Hydraulic Crane (2021), and the Intermill

Truck (2022).  ECF No. 38, PageID.828-838.  Moreover, Golba contends that Plaintiff refused training on new equipment needed to perform the scrap yard functions when GLW decided to perform scrap handling and processing work in lieu of having third-party contractor TMS handle this work for GLW.

Conversely, at his deposition, Plaintiff stated that not being trained on the majority of the equipment until 2021 deprived him of overtime opportunities because he was not qualified to work overtime from 2014 through 2021 if he was not trained on the equipment.  ECF No. 38, PageID.496.  When asked why he believed he had not received training, Plaintiff answered that it was because of his race and religion.  *Id*.

Plaintiff also claims he was discriminated against because he was denied overtime opportunities.  At GLW, an overtime board determined the next eligible person to be chosen for overtime.  If an employee accepted or refused overtime, or was not qualified to perform the overtime function, the employee would receive a "mark" on the board and move to the bottom of the roster until his or her next turn.  Plaintiff claims that Golba should have been the individual assigning overtime, but he abdicated his duties and had Aaron Worthington make the assignments.  Worthington had a public Facebook pace riddled with Islamophobic content.  Jennifer Hickey, USS's Senior Labor Relations Manager, had knowledge of Worthington's racist Facebook posts, but she did nothing.

In 2021, Plaintiff filed several grievances with the union complaining that the overtime board was not being kept accurately and that he was being denied overtime opportunities.  In August of 2021, Golba admitted there were accuracy problems with the overtime board.  By September of 2021, the overtime board still contained errors, including charging Plaintiff hours that another employee actually worked.  ECF No. 47, PageID.1747.  A review of GLW's overtime records shows that from May 30, 2020 through July 16, 2022, Plaintiff held a leading position on receiving overtime.  ECF No. 38, PageID.811 (showing Plaintiff received the third highest amount of overtime work in the TCD).  Defendant did not provide the overtime records preceding May of 2020.

Plaintiff's co-workers, Aaron Smith and Lance Bledsoe, witnessed specific individuals, including Manager Golba, as well as Frank Firmstone, Aaron Worthington, William Heskett, Zack Comacho and Debbie Williams make racist comments to Plaintiff related to his identity as an Arab Yemeni Muslim.  *See* ECF No. 41-3, PageID.1202, ECF No. 41-6, PageID.1299.

Mr. Smith witnessed employees calling Plaintiff a "terrorist" on a regular basis in the lunchroom and around the mill. ECF No. 41-3, PageID.1202.  Mr. Smith witnessed Mr. Firmstone make disparaging comments about Plaintiff's culture being "no good," and Mr. Worthington play Arabic music in the lunchroom in an effort to make fun of the music and Plaintiff.  *Id.*, PageID.1402-

1403. Mr. Smith further witnessed, Heskett, who was in charge of training all of the employees in the TCD, refuse to provide Plaintiff training on equipment he would train the white employees on in the TCD.  Smith also claims that Golba, contrary to the USW contract, gave titles of crew leader to Worthington and Heskett, the very people who were engaged in harassing Plaintiff for his identity as an Arab Yemeni Muslim.  Smith and Bledsoe wrote letters to Hickey notifying her of the mistreatment Plaintiff faced in the TCD.  However, Hickey made no attempt to follow up on the complaints or take any remedial action to ensure Mr. Muflihi was not being harassed at work.

Mr. Bledsoe also witnessed Golba single Plaintiff out and deny him a break in the lunchroom on several occasions while allowing other non-Muslim, non-Arab, non-Yemeni employees to use the lunchroom for breaks.  ECF No. 41-6, PageID.1299-1300. Bledsoe also witnessed Golba follow Plaintiff around the mill checking on his whereabouts and duties in a manner that Golba never did with any of the other TCD's employees.  He recalls an instance when Golba got into his personal vehicle at the end of his workday and started driving in the direction of the exit only to turn around and follow Plaintiff to the back of the mill while still in his personal vehicle and observed Plaintiff performing his job for a period of time.  Bledsoe had never seen Golba behave in a similar manner towards any other employees.

On May 10, 2021, Plaintiff filed a civil rights complaint with the union alleging disparity of treatment in job assignments, overtime, promotions, and harassment.  ECF No. 38, PageID.840.  In his civil rights complaint, Plaintiff disclosed that he believed the discrimination was based on his race and religion. On May 26, 2021, Plaintiff filed a complaint with Defendant's Ethics Point hotline. In his Ethics Point complaint, Plaintiff stated that Golba was harassing and discriminating, and always assigning extra tasks.  ECF No. 44.

On May 28, 2021, USS Senior Relations Manager Jennifer Hickey met with Plaintiff to investigate his complaints.  Ms. Hickey claims that at no point during her interview with Plaintiff did Plaintiff mention any concerns about co-worker harassment.  ECF No. 38, PageID.863.  She further maintains that neither his civil rights complaint nor his Ethics Point complaint contained any allegations of co-worker harassment. Plaintiff counters that he did orally inform her of his coworkers' and Golba's harassment. After speaking with Neal Golba, Hickey determined that Plaintiff's claims were unsubstantiated.

On June 2, 2021, USS Manager Mark Jobin reported that he found Plaintiff sleeping in a closed-off section of GLW.  As a result of Jobin's report, Plaintiff received a 5-day suspension for unsafe acts and inattention to duties on June 3, 2021, and a 1-day suspension for being out of his assigned work area.  Plaintiff

was afforded a hearing on the charges on June 8, 2021, following which USS

extended his 5-day suspension to 15 days to run concurrently.

On April 15, 2022, Frank Firmstone, who had recently retired, contacted

Hickey with an employment question.  Firmstone allegedly informed Hickey

during this call that he frequently heard Plaintiff refer to his African American

coworkers as the "N" word.  Upon receiving this information, Ms. Hickey opened

up an Ethics Point complaint.

On May 3, 2022, Plaintiff filed an Ethics Point Complaint against Golba

and Hickey alleging that they were retaliating against him.  USS assigned David

Coombes, a Labor Relations Manager, from another facility, to investigate

Plaintiff's and Hickey's complaints.  During the pendency of the investigation,

Plaintiff was disciplined on June 9, 2022 and June 10, 2022 for insubordination

and failure to work his assignment.  On both days, Plaintiff was assigned to

operate the Sennebogan, however Plaintiff claimed he did not feel comfortable

operating the machine. Plaintiff had been trained on the Sennebogan and was

qualified to operate it in 2021.  Golba told Plaintiff to watch Heskett operate the

machine on June 9, 2022, but Plaintiff claims Heskett refused to train him.  Mr.

Smith corroborates Plaintiff's claim.  Conversely, Heskett claims Plaintiff

complained about the job assignment and disappeared.  Plaintiff received a 5-day

suspension for the June 9, 2022 incident and another 5-day suspension for the June 10, 2021 incident.

Upon conclusion of Coombes' investigation into the allegations of Plaintiff's use of the N-word, USS issued a 5-day suspension subject to discharge on June 22, 2022. During the course of Coombes' investigation, he never questioned Plaintiff about the allegations made against him. Rather, Coombs only talked to a handful of employees, one of whom denied ever hearing Plaintiff use a racial slur. A hearing on the discipline was held on June 27, 2022, where Plaintiff was represented by the USW, and was presented with witness statements made against him. The USW presented statements from employees supporting Plaintiff. After considering the evidence, USS terminated Plaintiff on June 30, 2022, for violating USS's Sexual and Discriminatory Harassment Policy. Plaintiff filed a grievance and an Ethics Point complaint. The grievance was denied at all steps; however Plaintiff's discharge was overturned in arbitration. Plaintiff has refused to return to work claiming that he suffers from a mental illness that precludes him from returning to work.

## III.   LAW & ANALYSIS

### A.  Motion to Strike Affidavits

In support of his Response opposing Defendant's Motion for Summary Judgment, Plaintiff submitted the affidavits of former U.S. Steel employees Ahmad

Rahal and Lance Bledsoe, ECF No. 41-2 and ECF No. 41-6) and current U.S. Steel employee Aaron Smith, ECF No. 41-3.  Defendant argues that these affidavits should be stricken in their entirety because they are speculative, and contain inadmissible hearsay and conclusory statements without the requisite personal knowledge.  Upon review of these affidavits, the Court will grant in part and deny in part Defendant's Motion to Strike Affidavits.

Under Fed. R. Civ. P. 56(c)(4), any affidavits supporting or opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  It is well settled in this Circuit that inadmissible hearsay evidence cannot be used to support or oppose a motion for summary judgment. *Lucas v. Chance*, 121 F. App'x 77, 79-80 (6th Cir. Jan. 18, 2005) (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003); *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994)).  When a district court is presented with a motion to strike affidavits, "the Court should use 'a scalpel, not a butcher knife,' . . . strik[ing] portions of affidavits that do not satisfy the requirements of" Rule 56(c).  *Upshaw v. Ford Motor Co*., 576F.3d 576, 593 (6th Cir. 2009)(citing *Giles v. Univ. of Toledo*, 21 F.R.D. 466, 469 (N.D. Ohio 2007)).

As to Mr. Rahal's affidavit, the Court finds that Paragraph 4 should be stricken because it is not based on Mr. Rahal's personal knowledge. Mr. Rahal states that he did not work in the same department as Plaintiff, rather he worked as an accounting analyst for the Great Lakes Works facility. ECF No. 41-2, PageID.1197. In paragraph 4, Mr. Rahal states that, "[a]t some point in 2013 or 2014, Mr. Muflihi approached me and advised me that he had been the target of discrimination at U.S. Steel. Mr. Muflihi indicated that people in his department made disparaging comments about him related to his Arab Muslim identity." *Id.*, PageID.1198. This paragraph demonstrates that Mr. Rahal has no firsthand knowledge of the alleged disparaging comments directed at the Plaintiff. He learned this information from what Plaintiff told him, which is inadmissible hearsay. Moreover, Mr. Rahal did not work in the same department as Mr. Muflihi, and therefore he has no independent knowledge of the purported harassment directed at Mr. Muflihi. Contrary to Plaintiff's argument, his own statement to Mr. Rahal is not an opposing party's statement under Rule 801(d)(2). *See U.S. EEOC v. Rent-A-Center East Inc*., 303 F. Supp.3d 739 (C.D. Ill. 2018)("The plain language of Rule 801(d)(2)(A) requires that the statements be offered against, and made by, an "opposing party."). Paragraph 4 will be stricken.

Next, the deficiencies with Mr. Rahal's affidavit are not present in either Mr. Smith's or Mr. Bledsoe's affidavits. Both affiants worked with Mr. Muflihi in the

TCD of U.S. Steel.  ECF No. 41-3, PageID.1202, ECF No. 41-6, PageID.1298.

Both witnessed individuals "in the Trucks and Cranes Department," including Neal

Golba, Frank Firmstone, Aaron Worthington, William Heskett, Zack Comacho and

Debbie Williams make racist comments to Mr. Muflihi and about him related to

his identity as an Arab American Yemeni Muslim."  ECF No. 41-3, PageID.1202,

ECF No. 41-6, PageID.1299.  Mr. Smith also states that Mr. Golba came to him

directly and told him that he was asking employees to go the union to make

complaints about the individual he believed had filed a civil rights complaint

against him. ECF No. 41-3, PageID.1204.

Mr. Bledsoe also witnessed Mr. Golba deny Plaintiff a break in the

lunchroom, while never denying any other employees the ability to take a break in

the lunchroom.  PageID. 41-6, PageID.1300.  He further witnessed Mr. Golba

following Plaintiff around the plant checking on his whereabouts, while he never

observed Mr. Golba treating the other employees similarly.  *Id.*, PageID.1300-

1301.  Defendant's argument that the affidavits should be stricken because the

affiants failed to detail the specific dates of their personal observations is an

insufficient basis to strike their affidavits.  *See Zakre v. Norddeutsche Landsbank

Girozentrale*, 396 F. Supp. 2d 483, 503 (S.D.N.Y. 2005)("The lack of specific

details . . . will not render the affidavit inadmissible, but affect the weight and

credibility of the testimony, which have to be determined by the trier of fact at trial.")

Additionally, both Bledsoe and Smith never witnessed Mr. Muflihi causally converse with Firmstone, Worthington, Camacho, Heskett or Williams.  *Id*., PageID.1304.  Rather, the only interactions they witnessed between Plaintiff and these individuals were when these individuals were harassing and belittling the Plaintiff.  *Id.*  Thus, the fact they both find it unbelievable that Mr. Muflihi used racially derogatory comments in front of these individuals is not speculative as Defendant claims, but based on their personal knowledge while working with Plaintiff in the TCD. *Giles*, 241 F.R.D. a 469 ("In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts."); *United States v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005) ("Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about."); *Zakre*, 396 F. Supp. at 504 (citing *Searles v. First Fortis Life Ins. Co*., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) ("An affiant may testify to conclusions based on her personal observations over time.").

Based on the foregoing considerations, paragraph 4 of Mr. Rahal's affidavit will be stricken and the remainder of Defendant's Motion to Strike will be denied.

### B.  Motion for Summary Judgment

#### 1.  Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr*., 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

#### 2.  Racial, Religious, and National Origin Discrimination under Title VII, 42 U.S.C. § 1981, and the ELCRA

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys*.,

510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Similarly, the

ELCRA "prohibits 'discrimination against an individual with respect to

employment, compensation, or a term, condition, or privilege of employment

because of . . . race.'"  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir.

2014)(quoting Mich. Comp. Laws § 37.2202(1)(a)).  "[The courts] review claims

of alleged race discrimination brought under §1981 and the Elliot-Larsen Act

under the same standards as claims of race discrimination brought under Title VII

of the Civil Rights Act ("Title VII")."  *Jackson v. Quanex Corp.*, 191 f.3d 647, 658

(6th Cir. 1999).

A plaintiff asserting a discrimination claim must produce either direct or

indirect evidence of discrimination.  *Rogers v. Henry Ford Health Sys.*, 897 F.3d

763, 771 (6th Cir. 2018).  "Direct evidence of discrimination is 'that evidence

which, if believed, requires the conclusion that unlawful discrimination was at least

a motivating factor in the employer's actions.'"  *Wexler v. White's Fine Furniture,*

*Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-*

*Plough, Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  To

constitute evidence of discrimination, a discriminatory statement must be made by

a decisionmaker related to the decisional process.  *Geiger v. Tower Auto*, 579 F.3d

614, 620-21 (6th Cir. 2009)("Statements by nondecisionmakers, or statements by

decisionmakers unrelated to the decisional process itself cannot suffice to satisfy

the plaintiff's burden . . . of demonstrating animus.").  Here the statements made to Plaintiff were neither made by Hickey, the decisionmaker, nor related to the discipline decisions.  Contrary to Plaintiff's assertion, he must establish his case by circumstantial evidence and the burden-shifting approach laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1993).

In order for Plaintiff to establish a *prima facie* case of race, religious and national origin discrimination, Plaintiff must show that (1) he is a member of a protected class, (2) he was performing up to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) others, who are similarly situated and outside of the protected class were treated more favorably.  *Id*. at 802.  If Plaintiff can establish all four elements, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its employment action.  *Id.*  If the Defendant satisfies this burden, Plaintiff must produce sufficient evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination.  *Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769, 779 (6th Cir. 2016).

With respect to Plaintiff's *prima facie* case, Defendant asserts that Plaintiff cannot meet the third and fourth elements of his case—an adverse employment action and that similarly situated employees outside of Plaintiff's protected class were treated more favorably.  The Court finds Plaintiff has presented sufficient

evidence for a reasonable jury to conclude he suffered an adverse employment action and was treated less favorably than his similarly situated coworkers.

Defendant asserts that Plaintiff failed to identify a particular date that he was denied overtime that adversely affected him. Defendant argues that while Golba made an error with the overtime board in July of 2021, the Defendant agreed to correct the mistake by offering Plaintiff a make-up for July 13, 2021 which shows he did not suffer any adverse consequences as a result of the sole identified mistake with the overtime board.  Defendant ignores that Plaintiff claims he was denied overtime opportunities until 2021, because his training on the equipment was delayed in favor of his similarly situated coworkers. Plaintiff's co-worker Aaron Smith wrote a letter to Hickey that he believed white men were treated better and given more opportunities in the TCD.   Thus, Plaintiff has identified lost overtime opportunities during the majority of his employment at GLW.  While Defendant argues Plaintiff's overtime record demonstrate that he was one of the top employees to receive overtime at GLW from 2020 to 2022, it did not provide the overtime records from 2013 to 2019.

As to lost training opportunities, Plaintiff testified that he was either denied training altogether, or his training was delayed after his similarly situated coworkers received training, or he was provided less time to train compared to his co-workers.  Plaintiff asserts that he had to obtain 6 CDL permit for the trainings,

and claims his co-workers did not. However, he admits that some of his co-workers had CDL permits prior to their employment with USS. *Id*., PageID.481. The evidence tends to show that Plaintiff received the majority of his training after 2021. Plaintiff received training on operating the Gradall (2014), the CAT-Hough (2014), Taylor Mag (2015), Flat Bed Seal Truck (2018), Track Mobile (2021), Ottawa Scrap (2021), Sennebogen (2021), Water Truck (2021), Scrap Truck (2021), Hydraulic Crane (2021), and the Intermill Truck (2022). ECF No. 38, PageID.828-838. A reasonable jury could conclude that Plaintiff lost training opportunities compared with his similarly situated coworkers which resulted in lost overtime compensation.

Additionally, Plaintiff has presented evidence that similarly situated employees engaged in similar conduct to the alleged conduct of Plaintiff that led to his termination. Ms. Hickey was aware that Plaintiff's coworkers were using racist and Islamophobic comments to Plaintiff, but she never followed up on these complaints. Yet, when Frank Firmstone, Plaintiff's alleged harasser mentioned Plaintiff's alleged racist remarks in an unrelated conversation, Hickey immediately opens an Ethics Point complaint against Plaintiff, and he is terminated based on an unreliable investigation. For these reasons, Plaintiff has presented sufficient evidence for his *prima facie* claims for race, national origin, and religious discrimination in violation of Title VII, ELCRA and § 1981.

### 3. Retaliation

Title VII also prohibits discrimination against an employee because that employee engages in conduct protected by Title VII.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, Plaintiff must demonstrate that (1) he engaged in activity protected by Title VII; (2) Defendant knew that Plaintiff engaged in the protected activity; (3)  Defendant took an action that was "materially adverse" to Plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.[1]  *Laster*, 746 F.3d at 730.  If Plaintiff satisfies his burden, Defendant has the burden of producing evidence that Plaintiff was terminated for a non-retaliatory reason.  Jackson v. *Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).  If Defendant meets its burden, then Plaintiff can try to show the reason is merely pretext for retaliation. *Id.* The elements for retaliation under Title VII and the ELCRA are the same. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013).

Defendant argues Plaintiff cannot establish that the decision-makers knew of the protected activity and that a causal connection exists between the protected activity and the adverse employment action. Defendant is incorrect that there is no evidence Hickey had knowledge of Plaintiff's protected activity.  Plaintiff filed an Ethics Complaint against her on May 3, 2021.  There is also evidence Golba was

---

[1] Plaintiff does not assert he has direct evidence of retaliation.

aware of Plaintiff's complaints and directed Plaintiff's co-workers to retaliate against him for filing the complaints.  Plaintiff was terminated after filing his complaints based on a shoddy investigation into a retiree's complaints.  Plaintiff has presented sufficient evidence of knowledge and a causal connection.  He has set forth a *prima facie* case of retaliation under Title VII and the ELCRA.

### 4. Pretext

Defendant also argues that Plaintiff cannot establish its reasons for disciplining him and ultimately terminating him were pretext for discrimination**.**  A plaintiff must prove pretext by showing "(1) the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's actions, or (3) that they were insufficient to motivate the employer's action."  *Chen. v. Dow Chem. Co*., 580 F.3d 394, 400 n.4 (6th Cir. 2009).  To survive summary judgment, plaintiff must "produce sufficient evidence from which a jury could reasonably reject" the defendant's explanation why it fired him. *Id*.

As to pretext, the legitimacy of the investigation of Plaintiff's use of racially derogatory language was not undertaken in a thorough manner based on the arbitration decision.  Moreover, complaints by current employees about the racist treatment by coworkers toward Plaintiff went completely ignored by Hickey.  While Defendant argues it has terminated other employees for engaging in similar conduct as Plaintiff, it does not explain why complaints of similar harassment and

discrimination did not lead to any discipline against Plaintiff's harassers.  Plaintiff

has presented enough evidence for a reasonable jury to conclude Defendant's

stated reason for Plaintiff's termination was pretext for discrimination and

retaliation.

Plaintiff has presented sufficient evidence for a jury to reasonably conclude

Plaintiff suffered race, national origin, and religious discrimination in violation of

Title VII, ELCRA and § 1981 and retaliation in violation of Title VII, and the

ELCRA.

### 5.  Hostile Work Environment

Title VII protects employees from a workplace permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of employment and creates an abusive working

environment.  *Khalaf v. Ford Motor Co*., 973 F.3d 469, 487 (6th Cir. 2020).  The

Sixth Circuit has recognized that the same analytical framework applies to claims

under both ELCRA and Title VII. *Id*. at 482 (analyzing ELCRA and Title VII

hostile work environment under the same standard).

To establish a prima facie case of a hostile work environment, Plaintiff must

establish that (1) he belongs to a protected group, (2)  he faced unwelcome

harassment based on his race, religion, or national origin, (3) the harassment had

the effect of unreasonably interfering with his work performance and created an

objectively intimidating, hostile, or offensive work environment, and (4) Defendant knew about the harassment but failed to act.  *See Warf v. United States VA*, 713 F.3d 874, 878 (6th Cir. 2013).  Whether conduct is severe or pervasive depends upon the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  Offhand comments, petty slights, and isolated incidents (unless extremely serious) do not amount to a hostile work environment.  *See Stone v. We*st, 133 F. Supp.2d 972, 988 (E.D. Mich. 2001).

Here, the Court concludes that Plaintiff has come forward with sufficient evidence for a reasonable jury to conclude he was subjected to a hostile work environment based on his race, religion, and national origin.  Plaintiff claims that Golba and his coworkers regularly called him a "terrorist" and "the shoe bomber" and made fun of his food, bag, hairstyle, accent and made repeated racially derogatory comments.  Plaintiff further asserts that he informed Hickey of the harassment.  His claims of harassment were corroborated for Hickey when Plaintiff's co-workers, Bledsoe and Smith, wrote letters to her about Plaintiff's harassment by other coworkers while working in the TCD. They witnessed Golba deprive Plaintiff of his break and order him out of the lunchroom, while letting others stay, and Golba allowed Plaintiff's coworkers to mock his religion and

culture. Golba also followed Plaintiff around the plant, but did not do this with any other TCD employee. Golba assigned Plaintiff's harassers as Crew Leaders overseeing the overtime board and training opportunities. Despite Plaintiff's complaints about harassment and discrimination, Hickey did not take any disciplinary action against the harassers. For these reasons, Defendant is not entitled to judgment in its favor on Plaintiff's hostile work environment claims under Title VII and the ELCRA.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion to Strike Affidavits [#45] is GRANTED IN PART and DENIED IN PART.

Defendant's Motion for Summary Judgment [#38] is DENIED.

The following dates shall govern in this matter[2]:

| | |
|---|---|
| Motions *in Limine* due: | February 25, 2025 |
| Facilitation:[3] | To be completed no later than February 28, 2025 |
| Continued Settlement Conference with Magistrate Judge Elizabeth A. Stafford: | March of 2025 |
| Final Pretrial Order due: | March 25, 2025 |

---

[2] The parties shall refer to ECF No. 16 for this Court's Practices and Procedures.
[3] A proposed order for facilitation shall be submitted through the utilities function on CM/ECF no later than January 3, 2025. The proposed order shall identify the date set for facilitation and the facilitator.

Final Pretrial Conference:              April 1, 2025 at 2:00 p.m.

Trial:                                  April 15, 2025 at 9:00 a.m.

SO ORDERED.

Dated:  December 16, 2024         /s/Gershwin A. Drain
                                 GERSHWIN A. DRAIN
                                 United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 16, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager