UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JALAL MUFLIHI,

              Plaintiff,

                              Case No.: 22-cv-12609

v.                               Hon. Gershwin A. Drain

U.S. STEEL CORP.,

              Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE [#55], DENYING PLAINTIFF'S MOTION TO EXCLUDE COWORKER STATEMENTS [#58], GRANTING DEFENDANT'S MOTION TO PRECLUDE EVIDENCE RELATING TO OTHER LAWSUITS [#59], DENYING DEFENDANT'S MOTION TO PRECLUDE EVIDENCE RELATING TO UNION GRIEVANCE AND ARBITRATION [#60], DENYING DEFENDANT'S MOTION TO PRECLUDE EVIDENCE [#61], DENYING DEFENDANT'S MOTION TO PRECLUDE EVIDENCE RELATING TO OVERTIME AND LOST TRAINING OPPORTUNITIES [#62], GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PRECLUDE STRAY REMARKS [#63], GRANTING IN PART AND DENYING IN PART PLAINTIFF'S OMNIBUS MOTION _IN LIMINE_ [#90] AND CANCELLING SEPTEMBER 18, 2025 HEARING**

## I.    INTRODUCTION

      Plaintiff Jalal Muflihi brought the instant action against his former employer, United States Steel Corporation ("USS"), alleging Defendant discriminated against him based on his race, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., 42 U.S.C. § 1981, and

Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* (ELCRA). Plaintiff also alleges Defendant retaliated against him for filing complaints and grievances against his supervisor and a Senior Labor Relations Manager in violation of Title VII and the ELCRA. Finally, Plaintiff alleges that he was subjected to a hostile work environment in violation of Title VII and the ELCRA.

Now before the Court are the parties' Motions *in Limine*. These matters are fully briefed and upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of these matters. Accordingly, the Court will resolve the parties' pending Motions *in Limine* on the briefs and cancels the hearing set for September 18, 2025. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons that follow, the Court denies Plaintiff's Motion to Exclude Third-Party Statements and Testimony Relying on Third-Party Statements [#58], grants in part and denies in part Plaintiff's Omnibus Motion *in Limine* [#90], grants Defendant's Motion to Strike Untimely Expert Disclosures and Report [#55], grants Defendant's Motion *in Limine* to Preclude Evidence or Attorney Statements Relating to Other Lawsuits/Charges Against Defendant [#59], grants in part and denies in part Defendant's Motion *in Limine* to Preclude Either Evidence of or Attorney Statements Relating to Stray Remarks by a Non-Decisionmaker Including but not Limited to Any Testimony Relating to His Claim of Hostile Work

Environment [#63], denies Defendant's Motion *in Limine* to Preclude Evidence or

Attorney Statements Relating to Plaintiff's Union Grievance Arbitration Hearing,

Opinion or Award [#60], denies Defendant's Motion *in Limine* to Preclude Time-

Barred Evidence or Attorney Statements Relating to Time Barred Evidence [#61],

and denies Defendant's Motion *in Limine* to Preclude Attorney Argument or the

Introduction of Evidence Relating to Purported Lost Overtime and Training

Opportunities [#62].

## II.    FACTUAL BACKGROUND

Plaintiff is a Yemeni American Muslim who began his employment with

Defendant at its Great Lakes Works ("GLW") facility in Michigan on March 4,

2013. Plaintiff was a member of the United Steelworkers Union ("USW") and

worked as a utility technician in the Trucks and Cranes Department ("TCD").

Plaintiff was the only Yemeni American Muslim working in the TCD during his

employment with USS.  In 2014, Plaintiff was promoted to Labor Grade 2

position.  His job duties included providing mobile equipment support throughout

GLW.  Plaintiff was supervised by Neal Golba, who as manager, had the right

under the USW contract to manage the business and direct the work force in the

TCD.

Throughout his employment, Plaintiff claims he was subjected to verbal

harassment, mistreatment, and loss of job opportunities, including overtime and

3

training, because of his identity as an Arab Yemeni Muslim.  Plaintiff asserts that he was not trained on the majority of the TCD equipment until 2021, which deprived him of overtime opportunities because he was not qualified to work overtime if he was not trained on the equipment. Conversely, Defendant argues Plaintiff received training and certifications to operate several different types of equipment between 2014 and 2022.

In 2021, Plaintiff filed several grievances with the union complaining that the overtime board was not being kept accurately and that he was being denied overtime opportunities.  In August of 2021, Golba admitted there were accuracy problems with the overtime board.  By September of 2021, the overtime board still contained errors, including charging Plaintiff hours that another employee actually worked.

Plaintiff's co-workers, Aaron Smith and Lance Bledsoe, witnessed specific individuals, including Manager Golba, as well as Frank Firmstone, Aaron Worthington, William Heskett, Zack Comacho and Debbie Williams make racist comments to Plaintiff related to his identity as an Arab Yemeni Muslim.

On May 10, 2021, Plaintiff filed a civil rights complaint with the union alleging disparity of treatment in job assignments, overtime, promotions, and harassment.  On May 26, 2021, Plaintiff filed a complaint with Defendant's Ethics Point hotline. On May 28, 2021, USS Senior Relations Manager Jennifer

4

Hickey met with Plaintiff to investigate his complaints.  Ms. Hickey claims that at no point during her interview with Plaintiff did Plaintiff mention any concerns about co-worker harassment. After speaking with Neal Golba, Hickey determined that Plaintiff's claims were unsubstantiated.

On June 2, 2021, USS Manager Mark Jobin reported that he found Plaintiff sleeping in a closed-off section of GLW.  As a result of Jobin's report, Plaintiff received a 5-day suspension for unsafe acts and inattention to duties on June 3, 2021, and a 1-day suspension for being out of his assigned work area.  Plaintiff was afforded a hearing on the charges on June 8, 2021, following which USS extended his 5-day suspension to 15 days to run concurrently.

On April 15, 2022, Frank Firmstone, who had recently retired, contacted Hickey with an employment question.  Firmstone allegedly informed Hickey during this call that he frequently heard Plaintiff refer to his African American coworkers as the "N" word.  Upon receiving this information, Ms. Hickey opened up an Ethics Point complaint.

On May 3, 2022, Plaintiff filed an Ethics Point Complaint against Golba and Hickey alleging that they were retaliating against him.  USS assigned David Coombes, a Labor Relations Manager, from another facility, to investigate Plaintiff's complaint.  Upon conclusion of Coombes' investigation into the allegations of Plaintiff's use of the N-word, USS issued a 5-day suspension

subject to discharge on June 22, 2022.   A hearing on the discipline was held on

June 27, 2022, where Plaintiff was represented by the USW, and was presented

with witness statements made against him.  The USW presented statements from

employees supporting Plaintiff.  After considering the evidence, USS terminated

Plaintiff on June 30, 2022, for violating USS's Sexual and Discriminatory

Harassment Policy.

Plaintiff filed a grievance and an Ethics Point complaint.  The grievance

was denied at all steps; however, Plaintiff's discharge was overturned in

arbitration.  Plaintiff has refused to return to work claiming that he suffers from a

mental illness that precludes him from returning to work.

## III.   LAW & ANALYSIS

### A. Standard of Review

The purpose of a motion *in limine* is to ensure the evenhanded and

expeditious management of trials by eliminating evidence that is clearly

inadmissible.  *Ind. Ins. Co. v. General Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D.

Ohio 2004) (citing *Johasson v. Lutheran Child & Family Servs.*, 115 F.3d  436,

440 (7th Cir. 1997)). A court should exclude evidence on a motion *in limine* only

when that evidence is determined to be clearly inadmissible on all potential

grounds.  *Id*.  When a court is unable to determine whether or not certain evidence

is clearly inadmissible, evidentiary rulings should be deferred until trial so that

questions of foundation, relevancy and potential prejudice can be resolved in the proper context. *Id*. Whether or not to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law Sch*., 689 F.3d 558, 560 (6th Cir. 2012).

Rules 401 and 402 of the Federal Rules of Evidence permit the admission of only relevant evidence. Evidence that is irrelevant is inadmissible. *See* Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice does not mean damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993). "Unfair prejudice" is also "not equated with testimony that is simply adverse to the opposing party. Virtually all evidence is prejudicial, or it isn't material. The prejudice must be 'unfair.'" *Koloda v. General Motors Parts. Div., General Motors, Corp.*, 716 F. 2d 373, 378 (6th Cir. 1983).

Hearsay is inadmissible unless the statements fall within a recognized exception to the hearsay rules. Fed. R. Evid. 802. Hearsay is defined as a statement

that "the declarant does not make while testifying at the current trial or hearing" and the statement is offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The Sixth Circuit has held that "[a] statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015).

### B. Plaintiff's Motions *in Limine*

1. **Plaintiff's Motion *in Limine* to Exclude Third-Party Statements and Testimony Relying on Third-Party Statements [ECF Nos. 58 and 90 (Motion *in Limine* #2 in Omnibus Motion *in Limine*)]**

Plaintiff has filed two motions raising the same request to exclude his co-workers' statements that Plaintiff used racial derogatory language against his African American coworkers. Contrary to Plaintiff's argument, his coworkers' statements are non-hearsay evidence. Hearsay does not include statements offered to prove the defendant's knowledge, their effect on the defendant, or to provide context. *United States v. West*, No. 06-20185, 2010 U.S. Dist. LEXIS 11260, at *5-6 (E.D. Mich. Oct. 22, 2010). Here, Defendant seeks to introduce the statements to provide context for its termination decision and to explain why Defendant terminated the Plaintiff. These statements are not being offered for the truth of the matter asserted, and therefore, are not hearsay under Rule 801(c).

Even if the statements fell within the definition of hearsay, they are still admissible under the business records exception under Rule 803(b) of the Federal Rules of Evidence. *See* Fed. R. Evid. 803(b)(6).  "Business records are properly admitted under the business records exception to the hearsay rule if they satisfy four requirements: (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge."  *Cobbins v. Tenn. Dep't of Transp*., 566 F.3d 582, 588 (6th Cir. 2009).

Here, the written witness statements maintained by Defendant fall within the business records exception.  Each witness was required by US Steel policy to cooperate in the investigation; thus, they had a duty to report the information provided to US Steel's investigator.  The statements were made solely for the purpose of the investigation, which is a regularly conducted business activity.  As a result, these statements are business records under Rule 803(6).  *See Nemeth v. Citizens Fin. Grp*., No. 08-cv-15326, 2012 U.S. Dist. LEXIS 204960 (E.D. Mich. Aug. 13, 2012)(denying the plaintiff's request to exclude written employee statements because such evidence is "admissible for the nonhearsay purpose of

demonstrating [the employer]'s knowledge and motives in conducting the Interview, suspending and ultimately terminating Plaintiff.").

Finally, Plaintiff has not persuaded the Court that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

Accordingly, for all of these reasons, the Court denies Plaintiff's motions to exclude his coworkers' statements that he used racial slurs against his African American coworkers in the workplace.

### 2. Plaintiff's Omnibus Motion *in Limine*

#### i. Plaintiff's Motion *in Limine* to Exclude Reference to Changes in Representation (Motion *in Limine* #1)

Plaintiff has changed counsel during the pendency of these proceedings on four occasions. Plaintiff argues that reference or evidence related to Plaintiff's prior counsel is irrelevant to Plaintiff's discrimination, retaliation and hostile work environment claims. Alternatively, Plaintiff argues that any marginal relevance the evidence may have is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

Defendant responds that it has no intent to introduce evidence that Plaintiff had different counsel previously. However, Defendant argues it may need to refer to these changes during trial to explain discrepancies or to correct the record,

particularly where current counsel may be unaware of prior representations made by counsel.

The Court concludes that decision on this issue is premature. There is the potential that evidence concerning Plaintiff's prior counsel may be relevant in the limited context described by Defendant.  Therefore, Plaintiff's request to exclude reference to, or evidence of Plaintiff's prior counsel will be denied without prejudice.

### ii.     Plaintiff's Motion *in Limine* to Exclude Reference to Plaintiff's Arrest and Dismissed Charges (Motion *in Limine* #3)

Next, Plaintiff argues any evidence about his 2020 arrest is irrelevant, and inadmissible character evidence under Rule 404(b) and its admission would be severely prejudicial to Plaintiff.  In January of 2020, Plaintiff was arrested at a Walmart store for retail fraud in the third degree.  The charges were reduced to disorderly conduct and dismissed.  When questioned about this incident at his deposition, Plaintiff denied this incident occurred.

Defendant argues that Rules 607 and 608 permit the Defendant to inquire into a witness's credibility and character for truthfulness.  Defendant asserts that it does not intend to introduce evidence of the 2020 retail fraud charge to prove Plaintiff is a thief, but rather to demonstrate that Plaintiff has lied under oath about facts which are inconvenient to him in this very matter.

Here, Defendant is improperly attempting to impeach Plaintiff with extrinsic evidence of specific instances of conduct in violation of Rule 608(b).  Federal Rule of Evidence 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Fed. R. Evid. 608(b).  Here, Defendant seeks to use extrinsic evidence of Plaintiff's arrest to prove Plaintiff lied during his deposition about the incident at Wal-Mart.  As such, this evidence is subject to exclusion under Rule 608(b), and the Court will grant Plaintiff's request to exclude evidence related to the 2020 Wal-Mart arrest and charges.

### iii. Plaintiff's Motion *in Limine* to Exclude Argument that Plaintiff is Litigious Based on His Personal Finances (Motion *in Limine* #4)

Next, Plaintiff asserts that Defendant should be precluded from introducing evidence or argument about Plaintiff's personal finances in an effort to portray Plaintiff as litigious.  Plaintiff argues this evidence is irrelevant and overly prejudicial.  Defendant counters that this issue is premature as Defendant has not yet determined whether it intends to make an argument concerning Plaintiff's personal finances and litigiousness.  Defendant further asserts that if the Court were to consider Plaintiff's request at this juncture, the Court should only consider litigiousness attributable to Plaintiff's personal finances as this is the limitation Plaintiff has requested.

Here, the Court finds that argument or evidence suggesting Plaintiff is litigious because of his personal financial situation is improper under Rule 403 because it has an undue tendency to suggest decision on an improper basis. Plaintiff's request to preclude Defendant from arguing that Plaintiff is litigious based on his personal finances is granted.

### iv.   Plaintiff's Motion *in Limine* to Exclude Evidence of Plaintiff's Termination from ETS Accounting (Motion *in Limine* #5)

After Plaintiff was terminated by Defendant, he took a job at ETS Accounting in 2023. Plaintiff was terminated from his employment at ETS after one week on the job due to Plaintiff arguing with the owner. Plaintiff seeks to exclude evidence of his termination from ETS arguing the evidence is irrelevant, improper character evidence and overly prejudicial. Defendant counters that evidence of Plaintiff's termination and the basis for it are relevant to the issue of Plaintiff's duty to mitigate damages by seeking and maintaining employment.

The Court agrees with Defendant. To recover economic damages under the ELCRA and Title VII, a plaintiff has a duty to mitigate damages by seeking and maintaining employment. *See* 42 U.S.C. § 2000e-5(g); *Morris v. Clawson Tank Co.*, 459 Mich. 256, 263, 587 N.W.2d 253 (1998); *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996) (plaintiff has a duty to mitigate damages by seeking suitable employment with reasonable diligence). An

employee's "discharge for cause due to his willful violation of company rules will toll backpay." *Thurman*, 90 F.3d at 1169.  It is the employer's burden to establish that backpay should be tolled.  *Id*. at 1168.

Here, evidence of Plaintiff's termination and the reason for his termination are relevant to the issue of mitigation of damages.  The fact that Plaintiff was terminated due to his own willful conduct is relevant to whether Defendant is responsible for Plaintiff's ongoing economic damages.  Plaintiff has not demonstrated the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.  Accordingly, the Court will deny Plaintiff's request to exclude evidence of his termination from ETS Accounting.

### C. Defendant's Motions *in Limine*

#### 1.  Defendant's Motion to Strike Plaintiff's Untimely Expert Disclosures and Report

Defendant first seeks an order precluding the Plaintiff from introducing any expert witness opinion testimony at trial relative to Plaintiff's alleged economic damages because Plaintiff did not serve his expert disclosure and report until six months after the Court ordered deadline.  Plaintiff counters that he reasonably relied on an agreement with opposing counsel that economic expert reports would not be due until after the Court resolved the Defendant's Motion for Summary Judgment.  Plaintiff further asserts that the expert report was served 80 days before the trial date, which provided Defendant with ample time to review it and respond.

Plaintiff maintains there is no actual harm to the Defendant, thus striking Plaintiff's expert disclosure and expert report would be unjust and contrary to the principles of fair adjudication.

The parties have stipulated and the Court has entered an Order Extending the Scheduling Order dates in this matter on four separate occasions. The first stipulated order extending dates was entered on December 19, 2023. ECF No. 23. The parties' first stipulation stated: "[T]he parties do not anticipate that experts will be utilized regarding liability in this matter. To preserve resources, the parties stipulate and agree that discovery regarding damages experts shall be conducted after the Court rules on the motion for summary judgment in accordance with Fed. R. Civ. P. 26(a)(2)(D)." ECF No. 23, PageID.256-257. The second stipulation and order extending dates entered on February 26, 2024 also included the parties' agreement that economic damages expert disclosures were not due until the Court ruled on the Defendant's Motion for Summary Judgment. *See* ECF No. 24, PageID.260-261.

> IT IS FURTHER ORDERED that to preserve resources, the parties shall be permitted to conduct discovery pertaining to damages experts after the Court rules on a motion for summary Judgment. In this regard, the required expert disclosures under Fed. R. Civ. P. 26(a)(2) for economic and non-economic damages experts, including psychological experts, shall be disclosed no later than 120 days before trial[.]

*Id*. at 261.

However, the next two stipulated orders extending dates did not include the parties' agreement about serving economic damages expert disclosures and reports after the Court issued a decision on Defendant's Motion for Summary Judgment. On April 26, 2024, the parties agreed to the following with respect to expert disclosures and reports:

> [T]he required expert disclosures under Fed. R. Civ. P. 26(a)(2) for economic and non-economic damages experts, including psychological experts and reports submitted, shall be disclosed **June 8, 2024** in accordance with Fed. R. Civ. P. 26(a)(2)(D)(i); rebuttal experts shall be disclos[ed] **by July 8, 2024** in accordance with Fed. R. Civ. P. 26(a)(2)(D)(ii) and any discovery pertaining to damages experts shall be completed **by August 8, 2024**.

ECF No. 32, PageID.397 (emphasis in original). The final stipulated order extending dates, entered on June 17, 2024, stated "[t]he Scheduling Order (ECF No. 32) dates are extended for 45 days as follows: Discovery must be completed by August 19, 2024." Plaintiff did not serve his expert disclosure and report until January 27, 2025, or roughly five weeks after the Court issued its decision on the Defendant's Motion for Summary Judgment.

Rule 26(a)(2) of the Federal Rules of Civil Procedure controls the timing requirements for expert disclosures. Fed. R. Civ. P. 26(a)(2). "The default deadline for expert disclosures is at least 90 days before the date set for trial or for the case to be ready for trial." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668 (6th Cir. 2024) (internal quotation marks omitted) (citing Fed. R.

Civ. P. 26(a)(2)(D)(i).  When a party fails to comply with Rule 26(a)'s timing

requirements, that party is barred from using information or a witness "to supply

evidence on a motion, at a hearing, or at a trial." *Id.* (citing Rule 37(c)(1)).

"[E]xclusion of such evidence is 'automatic and mandatory' unless the party can

show its nondisclosure was substantially 'justified or harmless.'"  *Id*. (citing

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983

(6th Cir. 2004)).

　　　To determine whether late disclosure is substantially justified or harmless,

courts must consider the following factors:

> (1)  the surprise to the party against whom the evidence would be
> offered; (2) the ability of that party to cure the surprise; (3) the
> extent to which allowing the evidence would disrupt the trial; (4)
> the importance of the evidence; and (5)  the nondisclosing party's
> explanation for its failure to disclose.

*Id*. (quoting *Howe v. City of Akron*, 801 F..3d 718, 748 (6th Cir. 2015)).  "District

courts have broad discretion in applying these factors and need not apply each one

rigidly."  *Id*. (quoting *Bisig v. Time Warner Cable, Inc*., 940 F.3d 205, 218 (6th

Cir. 2019)).

　　　Neither party adequately addresses the *Howe* factors in their briefs.  As for

surprise, Defendant asserts that it was surprised by Plaintiff's January 2025

disclosure of an economic damages expert less than 90 days before the start of

trial.  However, since that time, Plaintiff has obtained substitute counsel and the

17

Court entered a new scheduling order on June 12, 2025 setting an October 7, 2025 trial date. Due to the adjournment of the trial date, Plaintiff argues Defendant could have attempted to depose Plaintiff's economic damages expert, but did not do so. Contrary to Plaintiff's position, Defendant could not cure the surprise because it could not depose the expert and file motions challenging the expert's qualifications or conclusions by the motion *in limine* deadline set by the Court. *Howe* factors one and two favor the Defendant.

As to the third *Howe* factor, there is no indication that Plaintiff's disclosure delayed trial. The trial date was moved for other reasons, such as to give the parties an opportunity to engage in settlement discussions or to provide substitute counsel time to review the case materials. This factor weighs in favor of Plaintiff.

The fourth *Howe* factor–importance of the evidence–cuts both ways. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220. Neither party addresses this *Howe* factor. This factor favors neither party.

As to the reason for Plaintiff's late disclosure, Plaintiff argues that he reasonably relied on opposing counsel's agreement to postpone production of expert disclosures and reports until after the Court ruled on the Defendant's Motion for Summary Judgment. Plaintiff relies on the Stipulated Order Extending Dates entered on February 26, 2024, which included the parties' agreement to

delay expert disclosures until the Court ruled on the Defendant's Motion for Summary Judgment.

Plaintiff's reliance on the February 26, 2024 Order Extending Dates is misplaced because the parties submitted a stipulation on April 26, 2024 to extend the scheduling order dates with an agreed-upon deadline of June 8, 2024 for the submission of expert disclosures.  In their April 26, 2024 Stipulation, the parties further agreed that expert reports were due no later than 120 days before the start of trial.  The April 26, 2024 stipulation and order supersedes the February 26, 2024 Order, thus Plaintiff cannot argue counsel reasonably relied on the parties' agreement to postpone expert discovery because Plaintiff's counsel agreed to the June 8, 2024 deadline for expert disclosures and agreed that expert disclosures had to be made no later than 120 days before the start of trial.

Plaintiff argues that it was "practically impossible" for Mr. Muflihi to have served the expert disclosure and report on December 16, 2024, which was the date the Court issued its decision on the Defendant's Motion for Summary Judgment, and exactly 120 days from the trial date of April 15, 2025.  Plaintiff's claim is belied by the record.  Plaintiff's economic damages expert's report is dated July 19, 2024.  As such, Plaintiff's counsel should have immediately produced the expert report upon the Court's decision on summary judgment.  Instead, Plaintiff

waited roughly another 5 weeks to serve the disclosure and report.  This factor favors exclusion.

In light of the *Howe* factors, the Court concludes that Plaintiff's failure to serve his economic expert disclosures and report by the Court's deadline is not substantially justified or harmless. As such, the Cour grants Defendant's Motion to Strike Plaintiff's Untimely Expert Disclosures and Report.

### 2. Defendant's Motion *in Limine* to Preclude Evidence or Attorney Statements Relating to Other Lawsuits/Charges Against Defendant

Defendant also seeks to preclude Plaintiff from introducing evidence of other charges of discrimination, harassment or retaliation filed against USS. Defendant argues this evidence is irrelevant to Plaintiff's claims, and even if relevant, the marginal value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. Plaintiff counters that evidence of other employee discrimination and retaliation charges against USS is relevant because they "establish a pattern of discriminatory and retaliatory behavior, making it more likely that USS will engage in the same conduct against Muflihi."  ECF No. 65, PageID.2361.

Contrary to Plaintiff's argument, evidence of other employee charges of discrimination, harassment or retaliation is not relevant to whether USS discriminated, harassed and retaliated against the Plaintiff himself.  Plaintiff has

not alleged any pattern or practice claims in the Second Amended Complaint. *See* ECF No. 17. Thus, the introduction of evidence related to other employee charges alleging discrimination and/or retaliation on any basis, such as age or sex, has no bearing upon whether Defendant discriminated against, harassed or retaliated against the Plaintiff. *See Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (finding that evidence of other employees' allegations of age discrimination should have been excluded as "simply not relevant to the issue in this case" because they "could not be logically or reasonably tied to the decision [related to the plaintiff]").

Based on the foregoing considerations, Defendant's Motion *in Limine* to Preclude Evidence or Attorney Statements Relating to Other Lawsuits/Charges Against Defendant is granted.

### 3. Defendant's Motion *in Limine* to Preclude Evidence or Attorney Statements Relating to Plaintiff's Union Grievance Arbitration Hearing, Opinion, or Award

Next, Defendant seeks to preclude Plaintiff from discussing during jury selection or opening statements or otherwise introducing evidence at trial regarding Plaintiff's union grievance, arbitration hearing and the opinion and award of the arbitrator. Defendant asserts that the arbitration evidence should be excluded because it is irrelevant to the case, and even if the Court finds this evidence

relevant, its marginal probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

Defendant's argument concerning the relevancy of the union grievance arbitration proceedings is not well taken. Defendant insists that the union grievance arbitration is irrelevant because the adjudication of proper cause was not based on race, religion, or national origin. However, this is not the relevancy standard under Fed. R. Evid. 401. The standard for relevancy under Rule 401 is "extremely liberal." *Ayers v. City of Cleveland*, 773 F.3d 161,169 (6th Cir. 2014) (quoting *Dortch v. Fowler,* 588 F.3d 396, 400 (6th Cir. 2009)). "Evidence is relevant if it has 'any tendency' to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. *Id*.

Here, the arbitrator's opinion that there was no proper cause to discharge Plaintiff is relevant evidence, despite the findings not being based on race, religion, or national origin. The arbitrator found that USS violated its policies and conducted an inappropriate investigation. This satisfies the relevancy standard under Fed. R. Evid. 401 because the finding that USS terminated Plaintiff without proper cause is highly probative on the issue of whether USS had a legitimate, non-discriminatory reason for Plaintiff's discharge. *See Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 142 (6th Cir. 1982) (noting that courts may consider an arbitration decision as persuasive evidence on the final step of the

*McDonnell Douglas*[1] analysis); *Lloyd v. Greater Cleveland Reg' Transit Auth.*, No. 1:18-cv-01557, 2021 U.S. Dist. LEXIS 202641, at *7-8 (N.D. Ohio Oct. 20, 2021) (denying motion *in limine* to exclude arbitration decision and allowing its admission to support the defendant's attempt to articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff's employment).

Next, Defendant argues that even if the union grievance arbitration proceedings are relevant, they should nonetheless be excluded under Fed. R. Evid. 403. Here, the probative value of the anticipated arbitration evidence substantially outweighs the danger of unfair prejudice to Defendant. The union grievance arbitration proceedings pass the Rule 403 balancing test as the evidence does not suggest a decision on an improper basis.

Defendant relies on *Mitchell v. County of Wayne*, No. 05-73698, 207 U.S. Dist. LEXIS 18549, *15 (E.D. Mich. March 16, 2007) and *Arlio v. Lively*, 474 F. 3d 46 (2d Cir. 2007) to demonstrate that the union grievance arbitration proceedings fail the Rule 403 balancing test. In *Mitchell* and *Arlio*, the arbitrator's decisions were wholly unrelated to the Plaintiff's specific claims against the defendant. Here, the arbitration findings are directly related to Plaintiff's claims against USS-specifically the final step of the *McDonnell-Douglas* test. While the arbitrator's final determination will be somewhat prejudicial, the probative value of

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973).

the evidence outweighs the prejudice.  Moreover, the Court finds no risk of confusing or misleading the jury. The Court will also consider a proposed limiting instruction to be read to the jury when this evidence is admitted and/or when the jury is charged.  The parties may submit proposed limiting instructions no later than October 3, 2025.

Accordingly, for the reasons articulated above, Defendant's Motion *in Limine* to Preclude evidence or attorney statements relating to plaintiff's union grievance, arbitration hearing, opinion, or award is denied.

### 4. Defendant's Motion *in Limine* to Preclude Time-Barred Evidence or Attorney Statements Relating to Time-Barred Evidence

Pursuant to Rules 401, 402 and 403**,** Defendant also seeks to exclude events and evidence that occurred outside of the applicable statute of limitations because these events occurred more than 300 days before the filing of Plaintiff's EEOC charge and more than three years before filing his ELCRA claims and more than four years before filing his § 1981 claim.

Plaintiff filed his first EEOC charge on November 5, 2021 alleging race, religion and national origin discrimination and retaliation.  In his charge, Plaintiff stated:

> In or around January 2021 and continuing I have been denied over-time opportunities by management that other employees outside of my protected class are benefiting. In or around January 2021 and

continuing I have been subjected to harassment by a member of management. In or around April 2021, I complained to my employer about harassment.

In or around April 2021, after I complained about harassment I was subjected to retaliation and different terms and conditions of employment.  In or around June 2021, I was suspended for actions other employees outside of my protected class are not subjected. During my time of employment, I have been denied opportunities for career advance to qualifications provided to employees outside of my protected class.

ECF No. 61, PageID.2249.  For the reasons discussed below, this motion is denied.

### i.    § 1981 claim

Defendant argues Plaintiff's § 1981 claim is limited to the discrete act of termination, thus events that took place more than four years before the filing of the Complaint (October 31, 2018) are time-barred and irrelevant. "It is well-settled that current discrimination cannot be proven by reference to acts of pre-limitations discrimination." *Stevenson v. General Elec. Co.*, No. 80-3644, 1982 U.S. App. LEXIS 11804, *8-9 (6th Cir. Aug. 16, 1982) (citing *United States Air Lines Inc. v. Evans*, 431 U.S. 553, 558 (1977)). However, "[s]uch evidence may be admissible as background evidence." *Id*. Moreover, "[p]re-limitations evidence may also be admissible if it is relevant to an issue in the case." *Id.*

Here, Defendant's intent is critical to the issue of pretext.  Moreover, the probative value of pre-limitations evidence is not substantially outweighed by the danger of unfair prejudice.  Additionally, the Court can instruct the jury that pre-limitations evidence is relevant to the issue of pretext and motive and that damages are only recoverable as to events that occurred on or after October 31, 2018. The parties shall submit proposed limiting instructions to the Court no later than October 3, 2025.

> ii.      **Title VII**

Next, Defendant argues that events occurring more than 300 days before Plaintiff's EEOC charge (January 9, 2021) are time-barred and irrelevant.  Here again, the Sixth Circuit allows the use of pre-limitations evidence as background evidence to support a timely Title VII claim.  *See Clack v. Rock-Tenn Co*., 304 F. App'x 399, 403 (6th Cir. Dec. 22, 2008).  "[I]n Title VII cases claiming a violation based on a discrete act of discrimination, a plaintiff is not prevented from using otherwise time-barred incidents as 'background evidence in support of a timely claim.'"  *Id*. (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).   Like the plaintiff in *Clark*, Plaintiff "is not attempting to recover based on [Defendant's past acts] but, . . . is simply using them as background evidence to prove pretext."  *Id*.  Because pre-limitations evidence is not irrelevant to the issue of pretext, exclusion under Rules 401 and 402 is

inappropriate.  Moreover, the probative value of this evidence is not substantially

outweighed by the danger of unfair prejudice.  The Court will likewise instruct the

jury that pre-limitations evidence is relevant to the issue of pretext and motive and

that damages are only recoverable as to events that occurred on or after January 9,

2021.  The parties shall submit proposed limiting instructions no later than October

3, 2025.

> ### iii.   ELCRA

Finally, Defendant argues evidence of events occurring more than three

years before Plaintiff filed his ELCRA claims are time-barred and subject to

exclusion.  *See* MICH COMP. LAWS §600.5805(2) (providing for a three-year statute

of limitations for claims brought under the ELCRA).  Here again, while courts

exclude recovery for discrete acts occurring outside of ELCRA's limitations

period, such evidence may still be admissible.  *See Brunson v. E & L Transport

Co*., 177 Mich. App. 95, 104; 441 N.W.2d 48 (1989) ("Evidence that the defendant

engaged in a long-term campaign or pattern of harassment or discrimination may

properly be considered" because "[s]uch evidence may constitute relevant

background information illuminating later practices and, thus, revealing

discriminatory motives.").

Because pre-limitations evidence is not irrelevant to the issue of pretext,

exclusion under Rules 401 and 402 is inappropriate.  Moreover, the probative

value of this evidence is not substantially outweighed by the danger of unfair prejudice.  The Court will also instruct the jury that pre-limitations evidence is relevant to the issue of pretext and motive and that damages are only recoverable as to events that occurred on or after October 31, 2019.  The due date for proposed limiting instructions is similarly October 3, 2025.

> **5. Defendant's Motion *in Limine* to Preclude Attorney Argument or the Introduction of Evidence Relating to Purported Lost Overtime and Training Opportunities**

Defendant also seeks to preclude Plaintiff from introducing any evidence of purported lost overtime and training opportunities because Plaintiff has failed to identify a single, specific instance where he was denied overtime or training, or a similarly situated individual outside of his protected class who was provided with an opportunity he was denied.  As such, Plaintiff should be prohibited from arguing or testifying that he was "routinely" denied training and overtime opportunities.

Plaintiff counters that this Court has already concluded in its summary judgment decision that there is sufficient evidence of lost training and overtime opportunities in the record to support his claims.  Plaintiff further asserts that the record contains specificity concerning Plaintiff's lost training and overtime opportunities.

Here, the Court has already determined that there is sufficiently specific evidence of lost training opportunities and overtime, including U.S. Steel's internal documents, as well as Plaintiff's and his co-workers' testimonies that Plaintiff was denied training on equipment needed in order to obtain overtime opportunities on that equipment.  For instance, Aaron Smith witnessed Golba allow Heskett to train on equipment, and observed Heskett refuse to train Plaintiff on certain equipment, while training all of the other employees in the department.  Plaintiff testified during his deposition that he was denied training on being a crane operator and scrap truck driver from Golba even though less senior, non-Yemeni and non-Muslim employees received such training.  In at least one instance, Plaintiff's non-similarly situated counterpart, Crystal Farrow, was allowed four weeks of training on a machine, whereas Plaintiff was only given one week.  Plaintiff further testified that US Steel required him to get CDL permits consistently in order to get training on certain equipment, and his co-workers did not have similar requirements.  For these reasons, Defendant's request to exclude evidence of lost overtime opportunities and training is denied.

### 6. Defendant's Motion *in Limine* to Preclude Either Evidence of, or Attorney Statements Relating to Stray Remarks by a Non-Decisionmaker Including But Not Limited to His Claim of Hostile Work Environment

Finally, Defendant seeks to exclude inflammatory and disparaging stray remarks by non-decisionmakers from trial.  Plaintiff counters that Defendant

29

cannot exclude relevant evidence pertaining to his hostile work environment claim. Specifically, Defendant seeks to exclude the following:  1)  Statements made by Plaintiff's Supervisor Neal Golba and Plaintiff's coworkers making fun of Plaintiff's food, bag, hairstyle, religion, accent, "camel-jockey, big" nose, and claiming his culture is "no good" and calling him a "shoe-bomber;"  2) social medial posts from Golba that state "stop all Muslims from coming to America" and "all lives matter;" and from coworker Aaron Worthington about a "white privilege card," 3) and photos of people sleeping at U.S. Steel.

As to Defendant's request to exclude Supervisor and coworker statements, the Court notes there has been evidence that Golba improperly gave some coworkers–Aaron Worthington, William Heskett, and Frank Firmstone– supervisory duties such as assigning overtime, and that these coworkers were given other "de facto" supervisory duties in the Trucks and Cranes Department. Firmstone is also the individual that initiated the complaint against Plaintiff resulting in Plaintiff's termination. The Court finds there is relevance to comments made by Plaintiff's Manager Golba, and by his coworkers because U.S. Steel should have known about these comments but failed to investigate.[2]  Defendant's Motion with respect to excluding Supervisor and coworker statements is denied.

---

[2] There is evidence that coworkers Aaron Smith and Lance Bledsoe informed Hickey of Plaintiff's Supervisor and coworker harassment, but she failed to follow through on their complaints.

As to the social media posts, the Court cannot ascertain the authenticity of these posts because they are not part of the record.  Plaintiff fails to respond with the requisite details.  Defendant's Motion with respect to excluding the social media posts is granted, with the caveat that if Plaintiff comes forward with the requisite details supporting authenticity and relevance, the Court may revisit this decision.

Finally, during discovery Plaintiff produced a series of undated, and un-timestamped photographs of people sleeping.  Defendant anticipates that Plaintiff intends to use the photographs to show that other employees were allowed to sleep at work.  Because these photographs are unauthenticated, Defendant maintains they are too unreliable and irrelevant and must be excluded.   The Court agrees and grants this aspect of Defendant's motion.  The photographs are inadmissible.

## IV.   CONCLUSION

Accordingly,  for  the  reasons  articulated  above,  Defendant's  Motion  to Strike Plaintiff's Untimely Expert Disclosures and Report [#55] is GRANTED.

Plaintiff's  Motion  *in  Limine*  to  Exclude  Third  Party  Statements  and Testimony Relying on Third-Party Statements [#58] is DENIED.

Defendant's Motion to Preclude Evidence or Attorney Statements Relating to Other Lawsuits/Charges Against Defendant [#59] is GRANTED.

Defendant's Motion to Preclude Evidence or Attorney Statements Relating to Plaintiff's Union Grievance Arbitration Hearing, Opinion or Award [#60] is DENIED.  Proposed limiting instructions due by **October 3, 2025**.

Defendant's Motion to Preclude Time-Barred Evidence or Attorney Statements Relating to Time-Barred Evidence [#61] is DENIED.   Proposed limiting instructions due by **October 3, 2025**.

Defendant's Motion *in Limine* to Preclude Attorney Argument or the Introduction of Evidence Relating to Purported Lost Overtime and Training Opportunities [#62] is DENIED.

Defendant's Motion to Preclude either Evidence of, or Attorney Statements Relating to, Stray Remarks by a Non-Decisionmaker [#63] is GRANTED IN PART and DENIED IN PART.

Plaintiff's Omnibus Motion *in Limine* [#90] is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

Dated:  September 16, 2025                    /s/Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             United States District Judge